```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ROBERT LEE WIGGINS, in his individual capacity and on
behalf of others similarly situated,
                                                                    Case No.: 16-cv-5959
                        Plaintiffs,                                 (LDW(GRB)

        -against-                                                   AMENDED COMPLAINT

THE GARDEN CITY GOLF CLUB a/k/a GARDEN CITY           Jury Trial Demanded
MEN'S CLUB d/b/a GARDEN CITY GC

                        Defendant.
-----------------------------------------------------------------X
```

Plaintiff Robert Lee Wiggins ("Plaintiff"), on behalf of himself and all other similarly situated employees of Defendant, by and through his attorneys, Frank & Associates, P.C., as and for his Complaint in this action against Defendant, The Garden City Golf Club a/k/a Garden City Men's Club d/b/a Garden City GC ("Defendant"), hereby alleges as follows:

## INTRODUCTION

1. Plaintiff and other similarly situated golf caddies bring this action to redress past wrongs and seek future protections. The golf caddies work exclusively for Defendant's golf club during the season from March to December. This action is brought as collective actions pursuant to Rule 23a of the FRCP.

2. Throughout their employment, golf caddies have been classified as neither employees nor independent contractors, and as a result have been deprived of basic rights guaranteed to all employees under Federal, State and Local Laws.

3. The golf caddies have been disenfranchised, as Defendant has deprived them of basic statutory protective benefits required under Federal Laws. For example, Defendant does not make

contributions for statutory benefits required by Federal Law such as Social Security and Medicare.

4. Plaintiff, and about twenty-five (25) to seventy (70) other similarly situated golf caddies employed by Defendant, routinely work more than forty (40) hours each work week. They are not paid any wages at all by Defendant, and receive neither the minimum wage required by Federal and State law, nor overtime wages, when they work more than forty (40) hours a week – which they do on a regular basis.

5. The golf caddies report to work each day at a regular starting time. They are managed and supervised by Defendant's Caddy Master. They receive assignments and duties and are subjected to discipline by the Caddy Master. In all aspects of their employment, the golf caddies are employees. But they are treated as one would robots who require only regular programming daily "turn on" and maintenance.

6. In light of these violations, Plaintiff, and others similarly situated, bring this action to recover unpaid wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et. seq.* (hereinafter "FLSA") and under the common law for such damages as may be determined for unjust enrichment and the deprivation of employment benefits required by Federal Law.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to the FLSA, 29 U.S.C. § 201, *et. seq.* and as a federal question pursuant to 28 U.S.C. § 1331.

8. Venue is proper in the United States District Court, Eastern District of New York, pursuant to 28 U.S.C. § 1391.

## PARTIES

9. Plaintiff and most members of the class are residents of the State of New York, residing in the County of Nassau.

10. Plaintiff and other similarly situated caddies work or worked at Defendant's golf course located at 206 Stewart Avenue, Garden City, New York 11530.

11. A golf caddy's job duties include carrying golf bags with clubs and golf balls weighing up to seventy (70) pounds along the eighteen (18) hole golf course up to two rounds per day, retrieving golf balls, and identifying players' individual golf balls on the course.

12. At all times relevant, Plaintiff and other similarly situated golf caddies are "employees" within the meaning of 29 U.S.C. § 203(e).

13. Upon information and belief, Defendant is a domestic, not-for-profit corporation with its principal place of business located at 315 Stewart Avenue, Garden City, New York, County of Nassau.

14. Upon information and belief, at all times relevant, Defendant had annual gross revenues in excess of $500,000 and engaged in commerce within the meaning of the FLSA § 206(a) and § 207(a).

15. Defendant is an "employer" within the meaning of § 203(d) of the FLSA, 29 U.S.C. § 203(d).

## FACTUAL ALLEGATIONS

16. Plaintiff Wiggins worked exclusively at Defendant's golf club as a golf caddy for eighteen (18) years from 1997 to 2015.

17. As a golf caddy, Plaintiff was responsible for carrying golf clubs weighing up to seventy (70) pounds, finding and retrieving golf balls, and identifying players' golf balls located on the course.

18. At all relevant times, Supervisor George Ouellette ("Ouellette") was the Caddy Master and was directly responsible for the regular supervision and oversight of the work performed by the caddies.

19. Ouellette oversees the work of between twenty-five (25) and seventy (70) golf caddies on a single day.

20. Defendant's golf course is open six (6) days a week from 7:30 am to closing time, which time varies depending on factors, such as available light, weather conditions and the number of golfers playing the course at dusk.

21. Golf caddies report to work at Defendant's clubhouse (the "Caddy Hut") to wait for Ouellette to assign them to assist a specific golfer or golfers in a group for a round on the 18-hole golf course.

22. Golf caddies typically work one or two rounds per day. During each round, the caddy is able to carry either one or two bags.

23. A round of golf may typically last up to four and one-half (4 1/2) hours. After finishing an "early" round, as part of regular duties, a caddy will clean the member's golf clubs and return to the Caddy Hut to wait for a new assignment.

24. Both before and after a round, while waiting for a new assignment, Ouellette instructs and directs the golf caddies to perform miscellaneous tasks, such as transporting bags from members' cars to the clubhouse or moving caddy carts around the premises as is necessary to accommodate the members.

25. A single round, including the cleaning of clubs and performing miscellaneous tasks while waiting for a new assignment, takes up to five (5) hours.

26. On days when the golf caddies work two rounds, they work up to eleven (11) hours. Plaintiff estimates that he worked two rounds per day at least three (3) days per week.

27. For example, the week of May 11, 2015, from Tuesday May 12, to Sunday May 17, Plaintiff worked sixty-three (63) hours. Plaintiff worked Tuesday, Wednesday, Thursday, Friday, Saturday, and Sunday, from 7:30 a.m. to 6:00 p.m.; ten and one-half (10.5) hours each day. Defendant failed to compensate Plaintiff minimum wage for any of the hours worked or overtime wages for the twenty-three (23) hours worked in excess of forty.

28. Ouellette controls the schedule of each caddy, pairing them with golfers at his discretion. Those caddies who report to work and are paired with a golfer at or about 7:30 am are more likely to work two rounds, and can carry a total of two to four bags each workday.

29. Defendant requires caddies to wear a specific uniform in the performance of their duties. Caddies must wear beige khakis, a white collared shirt, white sneakers, and a beige hat. The hat and shirt display the club's logo.

30. While the golf caddies are permitted to purchase the khakis and sneakers at a store of their choosing, the shirt and hat, adorned with the club logo, must be purchased from Defendant.

31. Defendant does not require the golf caddies to purchase a designated number of shirts or hats, but does mandate that the caddies wear clean garments each day, thus requiring caddies to purchase more than one shirt and hat from Defendant.

32. Defendant provides guidelines to its members on how much to pay caddies for a round. The pay scale is currently $80.00 per bag plus a discretionary gratuity of up to $20.00 or more per round. However, Defendant failed to pay the golf caddies any wages for any of the hours they worked.

33. Throughout the year, the Club hosts numerous golf tournaments, often lasting an entire weekend, Friday through Sunday, or Thursday to Saturday.

34. When there are tournaments, the caddies report to Ouellette at normal hours, but must abide by a stricter work schedule and more defined policies and procedures.

35. Thus, on those occasions, if a caddy is unable to report to work when scheduled, he must advise Ouellette in advance.

36. On tournament days, Plaintiff and the other caddies' hours would often exceed ten (10) hours per day, typically associated with two rounds of golf, and their work would continue until all golfers had completed their rounds, depending on light conditions.

37. On other days, if a caddy required a personal day, the request had to be made to Ouellette in advance. When a caddy is late or absent, without warning or explanation, Ouellette often withheld rounds from the caddy the following work day.

38. Also, as necessary, Ouellette will assign golf caddies to Cherry Valley Club, another private golf club in Garden City, to help with caddy services.

39. In sum, the golf caddies provide golf-related services to Defendant's members, which are integrated and essential to allow Defendant's normal golf operations to proceed.

40. At all times relevant, Defendant failed to keep records of the hours worked each day or week or to compensate the golf caddies for their hours of work. Further, Defendant willfully failed to compensate the caddies for overtime hours they regularly worked in excess of forty (40) hours per week, at a rate of at least one and one-half times the mandated minimum wage.

41. Caddies did not receive notification about their annual earnings in the form of a Federal W-2 or even a 1099, and as a result the Federal government was deprived of the revenues and other contributions required as a result of employment.

42. Contributions are not made on behalf of caddies for Social Security or Medicare and the caddies are deprived of the benefits of those mandated Federal benefit programs.

43. Defendant willfully disregarded and purposely evaded all record keeping employment requirements of various laws, including but not limited to the FLSA, by failing to maintain accurate time and payroll records.

## FEDERAL RULE OF CIVIL PROCEDURE
## RULE 23 – CLASS ACTION ALLEGATIONS

44. Plaintiff alleges and incorporates by reference all allegations in all preceding paragraphs.

45. Plaintiff represents a class consisting of all golf caddies employed by Defendant from 2013 to the date of judgment. Plaintiff and the members of the proposed class have been subjected to the same unlawful practices that result from failing to be classified as employees.

46. Plaintiff brings this claim on behalf of himself and a class of persons under Rule 23 of the Federal Rules of Civil Procedure consisting of all golf caddies who work or have worked for Defendant in the three (3) year period preceding the filing of the Complaint, and (1) did not receive minimum wage or overtime wages provided for under the FLSA, and (2) suffered on the basis of Defendant's failure to provide mandated federal benefits of employment associated with the caddies' status as employees of Defendant.

47. Plaintiff brings this action seeking minimum and overtime wages for golf caddies who, as a result of Defendant's willful conduct, were classified neither as employees nor independent contractors during the course of their employment.

48. Plaintiff additionally seeks monetary damages arising from Defendant's conduct in failing to provide Social Security or Medicare coverage for its caddies.

### A. Class Definition

49. The proposed Rule 23 Class consists of all golf caddies employed by Defendant from 2013 until the date of judgment. Upon information and belief, there are approximately up to fifty (50) members of the proposed class.

50. Plaintiff is a member of the Class he seeks to represent.

51. Defendant's unlawful conduct as described above persists to this day.

52. Plaintiff reserves the right to amend the Class definition based on discovery.

### B. Efficiency of Class Prosecution of Class Claims

53. Certification of this class of golf caddies similarly situated to Plaintiff is the most efficient and economical means for resolving the questions of law and fact that are common to Plaintiff and members of the proposed class.

54. Plaintiff's individual claims and their resolution will resolve the common questions of the proposed class.

55. Plaintiff seeks remedies to eliminate Defendant's willful violation of the FLSA and to recover unpaid minimum wage and overtime wages rightfully earned and due to the members of the proposed class.

56. Plaintiff additionally seeks to eliminate Defendant's unlawful practices which led to the denial of mandated federal benefits of employment and thereby caused Defendant to be unjustly enriched at the expense of Plaintiff and members of the proposed class.

57. Plaintiff has standing to seek such relief because of the effect Defendant's conduct has had on him individually and on the golf caddies generally. These injuries are redressable through systemic relief, such as equitable and injunctive relief, as well as other relief as this Court sees fit.

58. To obtain relief on behalf of both the Plaintiff and the members of the proposed class, Plaintiff will first establish that the golf caddies were employees of Defendant. Plaintiff will then establish that the Defendant's unlawful policies and practices harmed Plaintiff and the members of the proposed class. Absent class certification, a large number of similarly situated persons will be forced to prosecute their common claims in multiple forums simultaneously, leading to inefficient use of judicial resources and the unnecessary duplication of efforts and expense that numerous individual actions engender.

59. A class action is superior to other available methods for the fair and efficient adjudication of this litigation, particularly in the context of the wage and hour portion of this litigation. The proposed members of the class have been damaged and are entitled to recovery as a result of Defendant's common and uniform policies, practices, and procedures.

### C. Numerosity and Impracticability of Joinder

60. The proposed class that Plaintiff seeks to represent is so numerous that joinder of all members is impracticable.

61. The precise number of persons eligible for the class is unknown, but such information is readily ascertainable from Defendant. Upon information and belief, there are up to fifty (50) similarly situated individuals in the class.

62. Current employees may fear to assert their rights out of fear of direct or indirect retaliation. Former employees may be fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing those risks.

### D. Common Questions of Law and Fact

63. The adjudication of Plaintiff's claims will directly result in the adjudication of numerous questions of law and fact common to the members of the proposed class.

64. Those common issues include; (i) whether Defendant misclassified the members of the proposed class by failing to treat them as employees; (ii) whether Defendant's conduct was willful; (iii) whether Defendant failed to pay the members of the proposed class minimum wage in violation of the FLSA; (iv) whether Defendant failed to pay the members of the proposed class overtime wages at one and one-half (1.5) times their hourly wage rate for all hours worked over forty (40) hours per week; and (v) whether Defendant was unjustly enriched.

65. The policies, procedures, and practices implemented by Defendant were applied to all members of the proposed class.

66. The common issues of law and fact affecting the proposed members of the class predominate over any issues affecting solely Plaintiff.

67. Although the relative damages suffered by individual class members are not *de minimis,* such damages are small compared to the expense and burden of individual prosecution of this litigation. In addition, class treatment is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments regarding Defendant's practices.

### E. Typicality of Claims and Relief Sought

68. The claims of Plaintiff are typical of the claims of the proposed class he seeks to represent. Plaintiff's claims are typical of those claims which could be alleged by any member of the

proposed class, and the relief sought is typical of the relief which would be sought by each member of the proposed class in separate actions.

69. Similar to the members of the proposed class, Plaintiff is a golf caddy working exclusively for Defendant.

70. All of the members of the proposed class were subject to Defendant's failure to pay minimum and overtime wages in violation of the FLSA and were thus treated in the same and similar ways.

71. Similarly, all of the members of the proposed class were deprived of mandated federal benefits of employment associated with their status as employees of Defendant.

72. The relief necessary to remedy the claims of Plaintiff is the same as that necessary to remedy the claims of the proposed class members.

73. Plaintiff seeks the following relief for his individual claims and for the claims of the members of the proposed class: (1) unpaid wages for all hours worked; (2) unpaid overtime wages for all hours worked in excess of forty (40) hours per week at a rate of one and one-half times the minimum wage; (3) an equal amount of liquidated damages; and (4) damages for unjust enrichment.

### F. Adequacy of Representation

74. Plaintiff's interests are akin to those of the members of the proposed class. Plaintiff seeks to remedy Defendant's FLSA violations of failing to pay its employees minimum and overtime wages and Defendant's unlawful conduct of not providing mandated federal benefits of employment to its employees.

75. Plaintiff is willing and able to represent the members of the proposed class fairly and adequately since he was a member of the class for more than eighteen (18) years.

76. Plaintiff has retained counsel competent and experienced in complex class actions and in labor and employment litigation having engaged in employment litigation for over fifty (50) years, Plaintiff's counsel can competently litigate the individual and class claims sufficiently to satisfy Rule 23(a)(4) of the Federal Rules of Civil Procedure.

## FIRST CAUSE OF ACTION
## FOR FAILURE TO PAY MINIMUM WAGE
## IN VIOLATION OF THE FAIR LABOR STANDARDS ACT

77. Plaintiff alleges and incorporates by reference all allegations in all preceding paragraphs.

78. Defendant willfully failed to compensate Plaintiff and other similarly situated individuals by not paying the minimum wage for hours worked in violation of the FLSA.

79. Because Defendant's violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

80. As a result of Defendant's unlawful acts, Plaintiff and other similarly situated individuals have been deprived legally required compensation and are entitled to recovery of such amounts, liquidated damages, attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION
## FOR FAILURE TO PAY OVERTIME WAGES
## IN VIOLATION OF THE FAIR LABOR STANDARDS ACT

81. Plaintiff alleges and incorporates by reference all allegations in all preceding paragraphs.

82. Defendant willfully failed to compensate Plaintiff and other similarly situated individuals by failing to pay overtime wages for all hours worked in excess of forty (40) hours per week at a rate of at least one and one-half times their regular hourly rate, in violation of the FLSA.

83. Because Defendant's violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

84. As a result of Defendant's unlawful acts, Plaintiff and other similarly situated individuals have been deprived of their overtime compensation and are entitled to recovery of such amounts, liquidated damages, attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

### THIRD CAUSE OF ACTION
### FOR UNJUST ENRICHMENT FOR DEPRIVATION OF BENEFITS

85. Plaintiff alleges and incorporates by reference all allegations in all preceding paragraphs.

86. Defendant failed to make contributions and deduct for statutory benefits required by law such as Social Security and Medicare benefits.

87. As a result of Defendant's conduct, Defendant retained substantial benefits and has been unjustly enriched and Plaintiff and members of the proposed class are entitled to an award of monetary damages and other relief.

### DEMAND FOR A TRIAL BY JURY

88. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the Complaint.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

(i) Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

(ii) Designation of Plaintiff as a representative of the Rule 23 Class, and counsel of record as Class Counsel;

(iii) Award Plaintiff and other similarly situated individuals unpaid wages pursuant to 29 U.S.C. § 201 *et. seq.* and the supporting United States Department of Labor regulations, plus an equal amount of liquidated damages pursuant to 29 U.S.C. § 216(b);

(iv) Award Plaintiff and other similarly situated individuals overtime wages pursuant to 29 U.S.C. § 201 *et. seq.* and the supporting United States Department of Labor regulations, plus an equal amount of liquidated damages pursuant to 29 U.S.C. § 216(b);

(v) Compensatory damages;

(vi) Issuance of a declaratory judgment that the practices complained of in this Complaint are unlawful under the aforementioned statutes;

(vii) All attorneys' fees and costs incurred in prosecuting these claims;

(viii) Such other relief as this Court deems just and proper.

Dated: Farmingdale, New York
       February 27, 2017

**FRANK & ASSOCIATES, P.C.**

*Attorneys for Plaintiff*

_____
Michael A. Berger, Esq.
500 Bi-County Boulevard, Suite 465
Farmingdale, New York 11735
T: (631) 756-0400
F: (631) 756-0547
mberger@laborlaws.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

ROBERT LEE WIGGINS, in his individual capacity and on
behalf of others similarly situated,
                    Plaintiffs,

                                            Docket No.: 16-CV-5959 (LDW)(GRB)

                    -against-

THE GARDEN CITY GOLF CLUB a/k/a GARDEN CITY
MEN'S CLUB d/b/a GARDEN CITY GC

                    Defendant.
----------------------------------------------------------------X

## CERTIFICATE OF SERVICE

    Michael A. Berger, an attorney duly admitted to practice before this Court, declares the following under penalty of perjury:

    That on February 27, 2017, I caused a true and correct copy of the Amended Complaint to be served on Defendant The Garden City Golf Club a/k/a Garden City Men's Club d/b/a Garden City GC upon Defendant's counsel via ECF and via United Parcel Service by enclosing same in a securely sealed and postpaid envelope as addressed as follows:

                            Joshua A. Marcus, Esq.
                          Franklin, Gringer & Cohen, P.C.
                         666 Old Country Road, Suite 202
                            Garden City, NY 11530

Dated: February 27, 2017

                                                  _____
                                                  Michael A. Berger, Esq.
                                                  Frank & Associates, P.C.
                                                  500 Bi-County Blvd., Suite 465
                                                  Farmingdale, New York 11735
                                                  Tel. (631) 756-0400